

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2010 SEP 15 PM 4: 11

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
DEPUTY

| | | |
|---|---|---|
| Daniel R. Castro<br>Plaintiff | § § § § | |
| v. | § § § § | CIVIL ACTION NO:<br><br>**A10CA695 JN** |
| ENTREPRENEUR MEDIA, INC.<br>Defendant | § § | |

## ORIGINAL COMPLAINT

NOW COMES Daniel R. Castro, complaining of Entrepreneur Media, Inc., and

for cause of action, would show unto the Court as follows:

### I.  SUBJECT MATTER JURISDICTION AND VENUE

1.1     Plaintiff is seeking a declaration of rights with respect to federal trademark laws,

the First Amendment of the United States Constitution and the Anticybersquatting

Consumer Protection Act.

1.2     This Court's jurisdiction over this matter is proper pursuant to 28 USC §§ 1331,

1332 and 1338(a)(b), and pursuant to 15 U.S.C. § 1121(a)(Trademarks), 28 U.S.C. 2201

(Declaratory Judgment Act).

1.3     Venue is proper in this judicial district pursuant to 28 USC §1391 (b)(c), and 28

U.S.C. § 1392, in that  Defendant is a corporation that is subject to personal jurisdiction

in this district, and because a substantial part of the events or omissions giving rise to the

claims occurred in this district, and the property that is the subject of this action is located

in this district.

## II.   PERSONAL JURISDICTION

2.1     This Court has personal jurisdiction over the defendant because: (a) the defendant's contacts with the State of Texas are continuous and systematic; and (b) the defendant purposefully directs its activities to the residents of the State of Texas and plaintiff's cause of action arises out of, or is related to the defendant's contacts with the State of Texas.

2.2     Defendant markets and sells magazines in bookstores and news stands throughout Texas, including this District.

2.3     Defendant does business over the internet by entering into contracts with Texas residents, which contracts involve the knowing and repeated transmission of computer files over the internet.

2.4     Moreover, defendant's website is sufficiently interactive and commercial in nature to justify personal jurisdiction in that it processes credit cards, sells monthly subscriptions to its Texas users, allows subscribers to download articles, and provides e-mail addresses and links for customer service problems.

## III.   THE PARTIES

3.1     Plaintiff is Daniel R. Castro, is an award-winning author, and professional keynote speaker/trainer residing in Travis County, Texas.

3.2     Defendant is Entrepreneur Media, Inc. a California corporation, doing business all over the world via the internet, and selling magazines throughout the United States, including Texas, and may be served with process by serving its registered agent, Ronald L. Young at his office address at:  2445 McCabe Way Suite 400, Irvine, California 92614.

## IV.   FACTS

4.1     Daniel R. Castro is an award-winning author, a professional keynote
speaker/trainer and seminar leader, as well as a small business owner in Austin, Texas.
He is currently working on his second book[1], which has a working title of "Anatomy of
the Entrepreneur's Brain."  Castro has conducted approximately five years of research
into the lives of legendary entrepreneurs throughout history, and is currently interviewing
modern day, currently living entrepreneurs in support of his book.

4.2     Castro also writes articles on the subject of entrepreneurs and entrepreneurship for
free distribution in print magazines, business journals and online distribution through
Ezines.[2]

4.3     Castro often gives keynote presentations and conducts seminars and workshops
for Fortune 500 companies on the topic of entrepreneurs, innovation and
entrepreneurship.  Some of Castro's clients include IBM, Dell, Inc., Northwestern Mutual
Insurance, the American Red Cross, The City of Austin, The State of Texas Comptroller,
the U.T. School of Law, and the U.S. Military ("Wounded Warriors Transition Unit").

4.4     Castro is about to launch a Boot Camp For Entrepreneurs in which he will teach
corporate executives how to think and act more like entrepreneurs and how to be more
innovative.  Certain modules of the Boot Camp will also teach people how to launch their
own business.

4.5     In early January 2009, Castro coined the word "EntrepreNeurology" and began
using it in commerce.

---

[1] Castro's first book, CRITICAL CHOICES THAT CHANGE LIVES, won a few awards and is now
selling all over the world.
[2] An "Edina" is an online magazine usually distributed via email or via websites.

4.6     On January 16, 2009, Castro applied for the registration of the mark

"EntrepreNeurology."  No one opposed the mark.

4.7     On August 4, 2009, the trademark registration was granted.  That mark now has

the Registration No:  3,663,282.  A true and correct copy of the Registration Certificate is

attached as Exhibit 1.

4.8     In approximately April 2009, Castro coined the words EntrepreneurOlogy, and

the virtually identical Entrepreneur.Ology and began using them in commerce.  Castro

gave these almost identical words the following meaning:

> "The study of HOW entrepreneurs think; WHY they can make money in
> any economy; HOW they assess risk; HOW they survive and prosper with
> very little resources; WHY they can see opportunities that are invisible to
> others; HOW they bounce back from financial crisis; HOW they make
> millions during severe recession and depression; HOW they foster
> innovation and creativity in themselves and their teams."

4.9     On October 12, 2009, Castro registered an Assumed Name Certificate

with the Travis County Clerk, showing that the mark "entrepreneurology" was the

name under which he was doing business.  See Exhibit 2.

4.10    A word that has never existed in the English language before is considered

"fanciful" and, "inherently distinct", and therefore, entitled to trademark protection.

Classic examples of "fanciful" marks entitled to trademark protection are the words

"KODAK" and "EXXON."

4.11    In February, 2010, Castro purchased and registered the domain name

www.EntrepreneurOlogy.com to market his services as a keynote speaker, trainer and

workshop leader, as well as to market his Boot Camp For Entrepreneurs.  Castro has

marketed his services under three virtually identical marks:  (1) EntrepreneurOlogy; (2)

Entrepreneur.Ology; and (3) EntrepreNeurology.  The only difference in these marks is

the "dot" between the word "entrepreneur" and "ology," and the capitalization of the "N" in one word and the "O" in the other.

4.12    On March 20, 2010, Castro submitted his application for trademark registration of the mark "Entrepreneur.Ology" to the U.S. Patent and Trademark Office.

4.13    The Defendant, EMI, does not claim ownership of the marks EntrepreneurOlogy, Entrepreneur.Ology, or EntrepreNeurology.  Indeed, it never has.

4.14    The Defendant, EMI, does not claim ownership of the domain name: www.EntrepreneurOlogy.com

4.15    Instead, EMI claims ownership of the mark 'ENTREPENEUR" and operates a magazine under that mark.  The word "entrepreneur" is a word of French origin which has existed in the public domain for hundreds of years.  The Oxford English Dictionary defines "entrepreneur" as "one who undertakes an enterprise; one who owns and managers a business; a person who takes the risk of profit or loss."  The Compact Oxford English Dictionary 522 (2d ed. 1991).

4.16    EMI does not claim that the word "entrepreneur" is a "made-up" word or "fanciful" or "inherently distinct" under the Lanham Act.

4.17    Nor can EMI show conclusive evidence that the mark "ENTREPENEUR" distinguishes its products and services from anyone else's products and services related to entrepreneurship.

4.18    Nor can EMI show that consumers associate the word "ENTREPRENEUR" *exclusively* with its magazine.

4.19    Castro has never made any reference to Defendant's magazine, and has never done anything to imply that his products or services have any affiliation with ENTREPRENEUR magazine, or are sponsored by ENTREPRENEUR magazine.

4.20    Moreover, Castro does not market or sell a print or online magazine of any kind.

He simply writes books and articles on the subject of entrepreneurs and entrepreneurship

for free distribution in print magazines, business journals, websites and online Ezines,

and provides keynote presentations, seminars, workshops and Boot Camps for

entrepreneurs.

4.21    Castro does not make a dime (nor does he attempt to) from the publication of

these articles.

4.22    Castro's trademark application for the mark "Entrepreneur.Ology" went

unchallenged until two days before the deadline for opposition expired.  Two days before

the deadline, EMI file a motion to extend the deadline to oppose the mark.  See Exhibit 3.

4.23    EMI has not yet filed its opposition to Castro's trademark.

4.24    On September 7, 2010, counsel for EMI faxed Castro a "cease and desist" letter

claiming that it owns a trademark on the mark "ENTREPRENEUR."  See Exhibit 4.

4.25    In the same letter, EMI threatened to sue Castro if he did not give up rights to the

mark "Entrepreneur.Ology" and the domain name:  www.EntrepreneurOlogy.com.  EMI

gave Castro a deadline of September 21, 2010 to give up these valuable legal rights.  See

Exhibit 2.

4.26    EMI claims that its trademark on the word "entrepreneur" is incontestable under

15 U.S.C. § 1065, a claim which Castro challenges in this action.

4.27    It is because of this impending lawsuit and because an actual controversy exists

between Castro and EMI over the right to use mark Entrepreneur.Ology, and the domain

name www.EntreprneurOlogy.com, as well as his right to use the word "entrepreneur"

and its derivatives in his books, articles, seminars, workshops and his Boot Camp, that

Castro chose to file this action at this time.

## V.    STANDING

5.1    Castro has standing to bring this action because an actual, justiciable, and substantial controversy of sufficient immediacy and reality exists between the parties over the right to the ownership of the mark Entrepreneur.Ology, and the domain name www.EntrepreneurOlogy.com, and because EMI has threatened legal action against Castro if he does not cease and desist from using this domain name and the mark Entrepreneur.Ology.

5.2    Also at issue is Castro's First Amendment right to use the generic word "entrepreneur" and any derivatives of that word, in his upcoming book "Anatomy of the Entrepreneur's Brain," and in the substance of his articles dealing with entrepreneurs and entrepreneurship, as well as in the substance of his keynotes, seminars, workshops and his Boot Camp For Entrepreneurs, as well as in the marketing of the same.

## VI.    CAUSES OF ACTION

### A.    DECLARATION THAT 15 U.S.C. §1065, and 15 U.S.C. 1115(b) ARE UNCONSTITUTIONAL ON THEIR FACE AND AS APPLIED

6.1    Plaintiff incorporates all preceding and proceeding paragraphs herein by reference.

6.2    Castro seeks a judicial declaration that EMI's attempt to shield itself behind the Lanham Act's "incontestable" status is an attempt to kidnap the word "entrepreneur" from the lexicon of the English language, and is, therefore, a violation of the First Amendment.

6.3    Plaintiff seeks a judicial declaration that 15 U.S.C. §1065 is unconstitutional on its face and as applied because it violates Plaintiff's First Amendment rights to freedom of speech and freedom of expression in the use of the word "entrepreneur" and derivations thereof.

6.4    Plaintiff seeks a judicial declaration that 15 U.S.C. 1115(b)(the language declaring an incontestable mark as "conclusive evidence of the validity of the registered mark") is unconstitutional on its face and as applied because it violates Plaintiff's First Amendment rights to freedom of speech and freedom of expression in the use of the word "entrepreneur" and derivations thereof.

6.5    The common word "entrepreneur" is a generic noun that is in the public domain and which has been around for hundreds of years. The fact that a term resides in the public domain lessens the possibility that a purchaser would be confused and think that the mark came from a particular source.

6.6    No one should be allowed to use the Lanham Act's "incontestable" status to kidnap a commonly used word from the English lexicon.

6.7    While the trademark owner has an interest in preventing consumer confusion, there is a broad constitutional interest in preserving common, useful words for the public domain.

6.8    Castro, and authors worldwide, have been using the word "entrepreneur" in their books and articles for hundreds of years, and should be allowed the freedom to continue doing so for eternity. Every day, the Wall Street Journal, the New York Times, Forbes Magazine and Fortune Magazine use some derivation of the word "entrepreneur" in their publications. If EMI is allowed an "incontestable" trademark in that word, then each of these publications violate EMI's trademark every single day – multiple times a day.

6.9     Therefore, Castro requests a judicial declaration that 15 U.S.C. §1065, and 15

U.S.C. §1115(b) under which EMI claims its mark is "incontestable" should be declared

unconstitutional as a violation of the First Amendment on its face and as applied.

**B.     DECLARATION THAT EMI'S MARK IS NOT "INCONTESTABLE"**

6.10    Even if this court upholds the constitutionality of 15 U.S.C. §1065, and 15 U.S.C.

§1115(b), Castro seeks a judicial declaration that EMI's mark "ENTREPRENEUR" does

not qualify for "incontestable" status under 15 U.S.C. §1065.

6.11    Plaintiff seeks a judicial declaration that EMI's trademark is not "incontestable"

for four reasons:

6.12    It is well established law that even if a "junior user's" mark has attained

"incontestable" status, such status does not cut off the rights of the "senior user."

6.13    It is undisputed that Castro is the "senior user" of the following three marks:  (1)

EntrepreNeurology; (2) EntrepreneurOlogy; and (3) Entrepreneur.Ology.

6.14    Castro started using the marks "EntrepreNeurology," "EntrepreneurOlogy" and

Entrepreneur.Ology BEFORE Defendant even knew they existed.  Castro obtained a

federally registered trademark in the mark "EntrepreNeurology" before EMI knew it

existed.  In fact, EMI has never claimed any ownership interest in any of these three

marks.

6.15    Castro's use of these three marks has been continuous from the beginning.

6.16    Therefore, Castro is the senior user of these three marks, and EMI's claim that the

mark "ENTREPRENEUR" is "incontestable" does not make it "incontestable" as to

Castro's three marks.

6.17    In addition, EMI's trademark is not "incontestable" because the term

"entrepreneur" is merely generic.   No "incontestable" right can be obtained in a mark

which is a generic name for goods or services.  15 U.S.C. §1065

6.18    EMI's trademark is not "incontestable" because EMI has abused its trademark by

using it in restraint of trade in violation of the U.S. antitrust Laws.  15 U.S.C. §1; See 15

U.S.C. §1065.

6.19    As such, Castro seeks a judicial declaration that EMI's trademark in the mark

"ENTREPRENEUR" is invalid and should be cancelled.

## C.    DECLARATION OF INVALIDITY AND REQUEST FOR CANCELLATION

6.20    Even if this court rules that EMI's mark is "incontestable," Castro requests a

judicial declaration that the mark is invalid and requests that it be canceled.   An

"incontestable" mark that becomes generic may be cancelled at any time pursuant to 15

U.S.C. §1064(3).

6.21    Under 15 U.S.C. §§ 1052 and 1065(4), Castro seeks a judicial declaration that

EMI's trademark in the word "entrepreneur" is invalid, unenforceable, and should be

cancelled for the following reasons:

6.22    EMI's mark does not serve to identify and distinguish EMI's goods and services

from those of others and do not otherwise function as trademarks as defined in Section 45

of the Lanham Act, 15 U.S.C. § 1127.

6.23    The public has NOT come to associate the word "entrepreneur" *exclusively* with

EMI's products or services.

6.24    Plaintiff also requests a cancellation of EMI's trademark because EMI has used it

in restraint of trade in violation of the U.S. antitrust Laws.  15 U.S.C. §1

6.25    Pursuant to Section 37 of the Lanham Act, 15 U.S.C. 1119, this Court should order the Director of the United States Patent and Trademark Office to cancel each of the following of EMI's registrations:

Registration No. 1,453,968 in International Classes 9, 16, 35 and 41.

Registration No. 2,502,032 in International Classes 9, 16, 35, and 41.

Registration No. 3,520,633 in International Classes 9, 16, 35, and 41.

Registration No. 2,263,883 in International Classes 9, 16, 35, and 41.

Registration No. 2,033,423 in International Classes 9, 16, 35, and 41.

Registration No. 2,287,413 in International Classes 9, 16, 35, and 41.

Registration No. 2,174,757 in International Classes 9, 16, 35, and 41.

Registration No. 1,854,603 in International Classes 9, 16, 35, and 41.

Registration No. 2,215,674 in International Classes 9, 16, 35, and 41.

Registration No. 2,502,032 in International Classes 9, 16, 35, and 41.

Registration No. 3,204,899 in International Classes 9, 16, 35, and 41.

Registration No. 3,266,532 in International Classes 9, 16, 35, and 41.

Registration No. 3,374,476 in International Classes 9, 16, 35, and 41.

Registration No. 2,653,302 in International Classes 9, 16, 35, and 41.

Registration No. 3,470,064 in International Classes 9, 16, 35, and 41.

Registration No. 3,315,154 in International Classes 9, 16, 35, and 41.

Registration No. 2,391,145 in International Classes 9, 16, 35, and 41.

6.26    This court is empowered to declare invalid and unenforceable and to cancel Defendant's registered "entrepreneur" trademark.  Section 37 of the Lanham Act, 15 U.S.C. § 1119, provides as follows:  "In any action involving a registered mark, the court may determine the right to registration, order the cancellation of registrations, in whole or

in part, restore canceled registrations, and otherwise rectify the register with respect to

registrations of any part to the action.  Decrees and orders shall be certified by the court

to the Director, who shall make appropriate entry upon the records of the Patent and

Trademark Office, and shall be controlled thereby." 15 U.S.C. §1119.

**D.      DECLARATION OF NON-INFRINGEMENT AND/OR ALLOWABLE USE**

6.27    Even if this Court rules that EMI's mark is valid, Castro seeks a judicial

declaration that his use of the word "entrepreneur" and any derivative thereof, in his

books, articles, keynotes, seminars, workshops, websites, and marketing materials

promoting the same, is entitled to First Amendment protection, and is, therefore, non-

infringing.

6.28    Castro also seeks a judicial declaration that his marks:  (1) EntrepreNeurology;

(2) Entrepreneur.Ology; and (3) the domain name www.EntrepreneurOlogy.com do not

infringe on EMI's mark, or are otherwise allowed, for the following reasons:

6.29    It is well established that this word "incontestable" is very misleading because

there are at least nine statutory defenses to an "incontestable" trademark.  15 U.S.C.

1115(b)(1) – (9).

6.30    Even if EMI's mark is "incontestable," it is very weak because the word has been

in the public domain for hundreds of years, and is commonly used in the marketplace.

6.31    Widespread use of the word "entrepreneur" throughout the world serves as

confirmation of the need for the public to use that word.  There are few, if any synonyms

for the word "entrepreneur."

6.32    The evidence submitted in this case will show that many other magazines use the

word "entrepreneur" in the title.

6.33    The evidence submitted in this case will show that there are over one-thousand websites have used the word "entrepreneur" in the domain name.

6.34    The evidence will show that many worldwide publications, including the Wall Street Journal, the New York Times, Forbes Magazine and Fortune Magazine use the word "entrepreneur" thousands of times each month, both online and in their hard print versions.

6.35    The Ninth Circuit has already ruled that "EMI cannot have the exclusive right to use the word "entrepreneur" in any mark identifying a printed publication addressing subjects related to entrepreneurship." *See EMI, Inc. v. Smith*, 279 F.3d 1135 (9th Cir. 2002).

6.36    Castro also seeks a declaration that his use of the mark EntrepreneurOlogy and the domain name www.Entrepreneur.Ology.com are protected as: (a) fair use (under 15 U.S.C. 1115(b)(4) of the Lanham Act; (b) nominative fair use (under federal common law); (c) because Castro used and registered the marks first.  See 15 U.S.C. 1115(b)(6) of the Lanham Act; and (d) because EMI has abused its trademark by using it in restraint of trade in violation of the Sherman Antitrust Act. 15 U.S.C.§ 1115(b)(7); and (e) Free Speech under the First Amendment.

6.37    Castro's use of the word "Enterpreneur.Ology and the domain, www.EntrepreneurOlogy.com meet all the criteria for nominative use:  (1) Castro's keynotes, workshops, seminars, books, articles and website are NOT readily identifiable without the use of the mark; (2) only so much of the mark is being used as is reasonably necessary to identify Castro's keynotes, seminars, workshops, books, articles, and website; and (3) Castro has done nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by EMI.

6.38    There is no other single word that describes people who start and run businesses as succinctly or precisely as the word "entrepreneur."  Therefore, Castro cannot effectively market keynotes, seminars, workshops, books, articles, and a website dedicated to the study of entrepreneurs and entrepreneurship without use of some derivative of the word "entrepreneur."  Castro has used only so much of the mark as is reasonably necessary to identify his keynotes, seminars, workshops, books, articles, and website.

6.39    Under the "fair use doctrine," Castro is entitled to use the word "entrepreneur" and any derivative thereof, to describe his keynotes, seminars, workshops, books, articles, and websites (as well in the content of the same) regardless of whether Defendant's claimed trademark is registered.  See Section 33(b)(4) of the Lanham Act.

6.40    Castro has used the mark Entrepreneur.Ology and the domain name www.EntrepreneurOlogy in good faith with no attempt to imply sponsorship by or affiliation with ENTREPRENEURSHIP magazine.  There is no evidence to the contrary.

6.41    In short, Castro's fair use of the word "entrepreneur" is allowed, and to the extent EMI's trademark may be found valid or enforceable, should be declared non-infringing, or otherwise allowed.

**E.     ESTOPPEL AND ACQUIESCENCE**

6.42    EMI is barred from claiming infringement under the doctrines of estoppel and acquiescence because it failed to oppose Castro's trademark registration of the mark "EntrepreNeurology" and has never challenged Castro's use of this mark in commerce.

6.43    Castro applied for registration of the mark "EntrepreNeurology" on January 16, 2009, and received an unopposed registration of his mark "EntrepreNeurology" on August 4, 2009.  That mark now has the Registration No: 3,663,282.  See Exhibit 1.

6.44    Therefore, EMI is barred from now claiming infringement based on Castro's use

of the virtually identical mark Entrepreneur.Ology or the domain name

www.EntrepreneurOlogy.com.

**F.    DECLARATION THAT CASTRO'S MARKS DO NOT CONSTITUTE
UNFAIR COMPETITION UNDER 15 U.S.C. 1125.**

6.45    Plaintiff incorporates all preceding and proceeding paragraphs herein by

reference.

6.46    For all of the reasons already stated in this Complaint, Castro seeks a judicial

declaration that his use of the marks: (1) Entrepreneur.Ology; (2)

www.EntrepreneurOlogy.com; and (3) EntrepreNeurology do not constitute "unfair

competition" in violation of 15 U.S.C. 1125.

**G.    VIOLATION OF ANTITRUST LAWS**

6.47    EMI is guilty of violating the Sherman Antitrust Act by using the Lanham Act, to

create barriers to entry into the market that provides goods and services to entrepreneurs,

as well as to people who are interested in that subject matter.

6.48    EMI is abusing its trademark by using it to restrain trade in violation of 15 U.S.C.

§ 1, and to gain control over the market of products and services that seek to empower,

teach and train entrepreneurs, and to educate people on the topic of entrepreneurship.

EMI's pattern of threats and lawsuits against anyone who uses any variation of the

common noun "entrepreneur" creates a monopoly and a barrier to entry for competitors

who wish to publish entrepreneurial magazines, books, articles, keynotes, seminars,

workshops and websites using any variation of the word "entrepreneur."  Accordingly,

the trademark should be declared invalid, cancelled and/or held to be unenforceable.  In

the alternative, Plaintiff seeks a declaration that his use of the mark EntrepreneurOlogy

and the domain name www.Entrepreneur.Ology is non-infringing and/or allowed.

6.49    Defendant's trademark is an essential element, and a basic and fundamental

vehicle used in an illegal arrangement to violate the U.S. Antitrust Laws.

6.50    Defendant' threatening letter demonstrates bad faith and exhibits an intent to use

the trademark laws to minimize competition in the relevant market described above.

Defendant's September 7, 2010 letter evidence an intent to prevent Castro from using any

derivation of the word "entrepreneur" in connection with seminars, workshops, keynotes,

books, articles, and websites.  In so doing, Defendants are not only seeking exclusive use

of the word "entrepreneur," but also the exclusive right to conduct seminars, workshops,

keynotes, and publish magazines, books and articles related to entrepreneurship, and

create websites dedicated to the study of entrepreneurs and entrepreneurship.

6.51    On information and belief, EMI has entered into contracts, agreements,

combinations and conspiracies with its affiliates and the law firm of Latham & Watkins

to obtain a monopoly over this market.

6.52    Castro has been and/or will be injured by Defendant's violation of the above-

referenced antitrust laws, and seeks statutory, actual, and consequential damages, plus all

costs, expenses, and attorney's fees.

## H.    MISUSE OF TRADEMARK AND UNCLEAN HANDS

6.53    Defendant's attempt to prevent Castro and all others from using the word

"entrepreneur" constitutes a misuse of the trademark laws, rising to the level of unclean

hands, and as such, the trademark is unenforceable, even if there is no technical violation

of the Antitrust laws.  Thus, Castro's use the mark Entrepreneur.Ology and the domain

name, www.EntrepreneuerOlogy.com are allowed.  Castro's use of the word

"entrepreneur" in the substance of his books, articles, seminars, workshops, websites, and Boot Camp is also allowed.

## VII. SUSPENSION OF TTAB PROCEEDING PENDING OUTCOME OF THIS CASE

7.1     Plaintiff incorporates all preceding and proceeding paragraphs herein by reference.

7.2     The Trademark Trial and Appeal Board ("TTAB") is an administrative body. The remedy for a negative ruling by the TTAB is an appeal directly to a federal district court. See 15 U.S.C. 1071. The district court's review is a *de novo* review. 15 U.S.C. 1071. Therefore, a ruling by the TTAB is not binding on the district court and has no *res judicata* effect on the courts.

7.3     Castro's registration of the mark "Entrepreneur.Ology" is currently pending before the TTAB under Serial Number 77964153. EMI has filed a motion to extend the deadline to oppose the registration, and the motion was automatically granted. See Exhibits 3 and 5 respectively.

7.4     In order to avoid duplicate litigation, and because this court's decision will have a binding effect on the TTAB, Plaintiff hereby requests that this Court issue an order suspending the proceedings before the TTAB.

## VIII. DECLARATION OF RIGHTS UNDER THE ANTICYBERSQUATTING ACT

8.1     Plaintiff incorporates all preceding and proceeding paragraphs herein by reference.

8.2     EMI has threatened to sue Castro under the Anticybersquatting Consumer Protection Act if he does not turn over to them the domain name:

www.EntrepreneurOlogy.com.

8.3     Castro seeks a judicial declaration that his registration of the domain

www.EntrepreneuerOlogy.com is not a violation of the Anticybersquatting Consumer

Protection Act.  15 U.S.C. §1125(d) for the following reasons:

8.4     Castro is the owner of the federally registered mark, "EntrepreNeurology,"

Trademark Registration No: 3,663,282, and is therefore, entitled to register a domain

name using that exact spelling.  This spelling of the trademark above is exactly the same

as in the domain www.EntrepreneurOlogy.com.  The only difference is the capitalization

of the "N" in one word, and the capitalization of the "O" in the other word.  However, in

a digital world, neither the internet, nor the consumers, know the difference.

8.5     EMI has never claimed ownership of the mark "EntrepreNeurology" or the mark

"EntrepreneurOlogy" and has no ownership interest whatsoever in those marks.

Therefore, it is not entitled to protection under the Anticybersquatting Consumer

Protection Act.  15 U.S.C. 1125(d).

8.6     Moreover, Castro was using the mark EntrepreneurOlogy and EntrepreNeurology

in commerce before EMI, and registered the domain name www.EntrepreneurOlogy.com

before EMI.  In fact, EMI has never used the word EntrepreNeurology or

EntrepreneurOlogy in commerce to market its goods or services.

8.7     It is undisputed that Castro is the owner of the mark "EntrepreneurOlogy" under

common law, and is the federally registered owner of the trademark "EntrepreNeurology"

under Trademark Registration No: 3,663,282.

8.8     When EMI sent Castro a threatening letter demanding that he turn over his

valuable property rights to them, it knew that Castro was the owner of a registered

trademark in the mark "EntrepreNeurology" and therefore, was entitled to register the

domain www.EntrepeneurOlogy.com because the spelling is identical.  Therefore, EMI's

threatening letter is an abuse of the Anticybersquatting Consumer Protection Act and attempt to restrain trade in violation of the Sherman Antitrust Act.

8.9     Castro registered that domain name in good faith, and has never tried to sell it to EMI or anyone else for profit.

8.10    EMI does not have a mark that is "famous" or "distinct" or has any chance of being confused with the domain: www.EntrepreneurOlogy.com.

8.11    Castro is making a bona fide use of the domain www.EntrepreneurOlogy.com to market his goods and services.

8.12    Castro has not made any attempt to divert consumers away from EMI's website or to harm EMI's goodwill in any way.

8.13    Castro has never implied that the domain www.EntrepreneurOlogy.com has any affiliation with or sponsorship or endorsement by EMI.

8.14    The contact information associated with the registration of the domain is Castro's own office address, and the phone number given was his office number.  Therefore, there is no evidence that Castro provided any false or misleading contact information in the registration of the domain.

8.15    Castro has never engaged in a pattern of registering multiple domain names which are identical or confusingly similar to marks that belong to others.

8.16    Castro believed in good faith that his registration of the domain name was fair use and/or otherwise lawful because he is the owner of Trademark No. 3,663,282 for the mark "EntrepreNeurology," which has the identical spelling as the domain name in question.

8.17    Therefore, Castro is entitled to a judicial declaration that his ownership and use of the domain www.EntrepreneurOlogy.com is legal and not in violation of the Anticybersquatting Consumer Protection Act.

## IX.    REVERSE DOMAIN NAME HIJACKING

9.1    Plaintiff incorporates all preceding and proceeding paragraphs herein by reference.

9.2    EMI knew Castro was the lawful owner of the federally registered trademark "EntrepreNeurology." Therefore, EMI knew that Castro was entitled to lawfully register the domain www.EntrepreurOlogy.com because the spelling is identical. Despite this knowledge, EMI sent Castro a letter demanding that he turn over this valuable property right to them.

9.3    EMI also knew that Castro was the first to use the marks EntrepreNeurology and EntrepreneurOlogy in commerce and was the first to register the domain name: www.EntrepreneurOlogy.com.

9.4    EMI knew it had no legitimate claim of ownership of that mark or that domain name.

9.5    EMI knew that Castro was not using that domain to divert consumers away from its website.

9.6    EMI knew that Castro was not using that domain to imply any affiliation with or sponsorship or endorsement by EMI.

9.7    EMI knew that Castro was not in the magazine publishing business.

9.8    EMI knew that Castro had never attempted to sell the domain to EMI or anyone else for profit.

9.9     EMI knew that Castro was only using that domain in a bona fide good faith attempt to market his own goods and services, which are not at all similar to or confusing with EMI's goods and services.

9.10    EMI is abusing the Anticybersquatting Consumer Protection Act in order to restrain trade in violation of the Sherman Antitrust Act. 15 U.S.C. §1. EMI is using the Anticybersquatting Consumer Protection Act in an attempt to steal the lawfully owned and registered domain names from small business owners, and thereby, bar new entrants into the market of providing products and services related to entrepreneurs and entrepreneurship.

9.11    EMI seeks to gain control over the market of products and services that seek to empower, teach and train entrepreneurs, and to educate people on the topic of entrepreneurship. EMI's pattern of threats and lawsuits against anyone who uses any variation of the common noun "entrepreneur" creates a monopoly and a barrier to entry for competitors who wish to publish entrepreneurial magazines, books, articles, keynotes, seminars, workshops and websites using any variation of the word "entrepreneur."

9.12    Upon information and belief, EMI has entered into various agreements, contracts, combinations and conspiracies with its affiliates and the law firm of Latham & Watkins to use the Anticybersquatting Consumer Protection Act to restrain trade.

9.13    Defendant's trademark is an essential element, and a basic and fundamental vehicle used in an illegal arrangement to violate the U.S. Antitrust Laws.

 9.14   EMI's conduct has harmed Castro, and therefore, Castro seeks statutory damages, actual and consequential damages under the Sherman Antitrust Act, as well all costs, expenses, and attorney's fees.

## X.    REMEDIES SOUGHT

10.1    Judicial Declaration that:

(a)      15 U.S.C. 1065, and 15 U.S.C. 1115(b) are unconstitutional on their face and as applied;

(b)      EMI's mark "ENTREPRENEUR" does not qualify as "incontestable" under the Lanham Act;

(c)      EMI's mark "ENTREPRENEUR," and all of its marks using the word "entrepreneur" as listed in the Registration Numbers in this Complaint are invalid and should be cancelled;

(d)      Castro's marks:  (1)  EntrepreNeurology; (2) Entrepreneur.Ology; and (3) www.EntrepreneurOlogy.com are non-infringing or otherwise allowed;

(e)      EMI is barred from enforcing its trademark under the doctrines of estoppel and acquiescence;

(f)      Castro's use of the above referenced three marks do not constitute "unfair competition" under 15 U.S.C. §1125;

(g)      EMI is using its trademark to restrain trade in violation the Sherman Antitrust Act;

(h)      EMI has abused the Lanham Act and has "unclean hands;"

(i)      Castro has not violated the Anticybersquatting Consumer Protection Act;

10.2    For a jury trial on the merits of Castro's Sherman Antitrust claims, and a judgment awarding him actual, consequential and statutory damages;

10.3    Reasonable and necessary attorney's fees pursuant the Declaratory Judgments Act, the Lanham Act, and the Sherman Antitrust Act;

10.4    Additional statutory damages and punitive damages for willful and intentional conduct as allowed by law;

10.5    An order suspending the proceeding before the TTAB.

### XI.    REQUEST FOR JURY TRIAL

11.1    Plaintiff hereby requests a trial by jury.

### XII.    PRAYER

12.1    Wherefore, Plaintiff requests that the Defendant be cited to appear and answer herein and for Court Orders and Judgment as follows:

12.2    Judicial Declaration that:

(a)    15 U.S.C. 1065, and 15 U.S.C. 1115(b) are unconstitutional on their face and as applied;

(b)    EMI's mark "ENTREPRENEUR" does not qualify as "incontestable" under the Lanham Act;

(c)    EMI's mark "ENTREPRENEUR," and all of its marks using the word "entrepreneur" as listed in the Registration Numbers in this Complaint are invalid and should be cancelled;

(d)    Castro's marks: (1) EntrepreNeurology; (2) Entrepreneur.Ology; and (3) www.EntrepreneurOlogy.com are non-infringing or otherwise allowed;

(e)    EMI is barred from enforcing its trademark under the doctrines of estoppel and acquiescence

(f)    Castro's use of the above referenced three marks do not constitute "unfair competition" under 15 U.S.C. §1125;

(g)     EMI is using its trademark to restrain trade in violation the Sherman Antitrust Act;

(h)     EMI has abused the Lanham Act and has "unclean hands;"

(i)     Castro has not violated the Anticybersquatting Consumer Protection Act;

12.3    For a jury trial on the merits of Castro's Sherman Antitrust claims, and a judgment awarding him actual, consequential and statutory damages;

12.4    Reasonable and necessary attorney's fees pursuant the Declaratory Judgments Act, the Lanham Act, and the Sherman Antitrust Act;

12.5    Additional statutory damages and punitive damages for willful and intentional conduct as allowed by law;

12.6    An order suspending the proceeding before the TTAB;

12.7    Costs of Court, and expenses incurred in the litigation;

12.8    Pre and post-judgment interest; and

12.9    Such other and further relief at equity and at law to which Plaintiffs may be justly entitled.

Respectfully submitted,
**CASTRO & BAKER, LLP**

By: _Daniel R. Castro_

Daniel R. Castro
State Bar No. 03997390
7800 Shoal Creek Blvd.
Suite 100N
Austin, Texas 78757
phone: (512) 732-0111
fax:    (512) 732-0115